*Formatted for Electronic Distribution*                                                                                              *Not for Publication*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

Filed & Entered
On Docket
August 16, 2010

In re:

**Robert Sheridan,**                                                      Chapter 13 Case
          **Debtor.**                                                                 # 10-10321

| *Appearances:* | *Rebecca Rice, Esq.* | *Jan Sensenich, Esq.* | *Ross Feldmann, Esq.* |
|---|---|---|---|
| | *Rutland, VT* | *Norwich, VT* | *Burlington, VT* |
| | *For the Debtor* | *Chapter 13 Trustee* | *For Sovereign Bank* |

### MEMORANDUM OF DECISION
### GRANTING SOVEREIGN BANK'S MOTION FOR RELIEF FROM STAY

      When Robert Sheridan ("the Debtor") filed his chapter 13 bankruptcy case on March 10, 2010, he was in default on the payments due to Sovereign Bank under a note secured by a Boston Whaler boat. A few days prior to this, on March 4, 2010, Sovereign Bank had obtained a writ of replevin in state court. When Sovereign Bank attempted to serve the writ on the Debtor and retrieve the boat, it learned of the Debtor's bankruptcy filing. The question before the Court is whether the boat became property of the Debtor's estate upon commencement of his bankruptcy case despite being subject to a pre-petition writ of replevin, and if so, whether Sovereign Bank has shown cause for the granting of relief from stay under 11 U.S.C. § 362(d)(2).[1] For the reasons set forth below, the Court holds that: 1) the boat is property of the Debtor's estate because, under Vermont law, the Debtor retained an equitable interest in the boat as of the date of the commencement of this case; and 2) that Sovereign Bank is entitled to relief from stay.

### JURISDICTIONAL STATEMENT

      This Court has jurisdiction over the instant motion pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(G).

### FACTUAL BACKGROUND

      The following material facts are not in dispute. On or about August 5, 2004, First Commercial Corporation of America issued a consumer note to the Debtor for $27,131 (doc. # 10, ¶ 1). First Commercial Corporation assigned the note to Sovereign Bank on August 17, 2004 (doc. # 10, ¶ 2). The note is secured by a UCC lien on the 2003 Boston Whaler Nantucket Hull, a single O/B 115 horsepower Mercury engine, and a Karavan Trailer ("the Collateral"), perfected by a UCC-1 statement filed on August 27, 2004 (doc. # 10, ¶ 3). Under the parties' security agreement, the Debtor assigned title and interest to

---

[1] All statutory citations refer to Title 11 United States Code (the "Bankruptcy Code") unless otherwise specified.

the boat to Sovereign Bank (doc. # 10, ¶ 3). The Debtor failed to make certain payments due under the note, which caused a default under the note on one or more occasions (doc. # 10, ¶ 5). Sovereign Bank attempted to repossess the boat, but was unable to locate it (doc. # 10, ¶ 7). On February 9, 2010, Sovereign Bank filed an action in Bennington Superior Court to obtain a writ of replevin (doc. # 10, ¶ 7). On March 4, 2010, the state court held hearing on the replevin matter and issued a writ of replevin dated March 8, 2010 (doc. # 10, ¶ 8). When Sovereign Bank attempted to serve the writ on the Debtor, it was advised that he had filed for bankruptcy relief (doc. # 10, ¶ 9).

On March 10, 2010, the Debtor filed his Chapter 13 bankruptcy petition, and listed Sovereign Bank on schedule D as the holder of a claim secured by a Boston Whaler (doc. # 1, p.13). On March 23, 2010, Sovereign Bank filed a motion for relief from stay to execute the writ and repossess the Collateral (doc. # 10). Sovereign Bank argued that the Collateral was not property of the estate, and alternatively, if the Court found it was property of the estate, the Debtor had no equity in the boat and did not need for it for an effective reorganization. The Debtor filed an objection to the motion (doc. # 19), and Sovereign Bank replied to the Debtor's objection (doc. # 20).

On April 15, 2010, the Court held a hearing on the motion for relief from stay and ordered the parties to file briefs on the replevin issue. On June 17, 2010, after considering the briefs (doc. ## 23, 26, 28) the Court ruled from the bench that the boat was property of the Debtor's estate under the Vermont redemption statute, and set an evidentiary hearing to determine whether the boat was necessary for the Debtor's reorganization, and thus whether relief from stay was warranted. This memorandum is issued to articulate the Court's basis for its ruling that the boat is property of the estate and to rule of the question of whether Sovereign Bank has established grounds for relief from stay.

## DISCUSSION

### A. THE BOAT IS PROPERTY OF THE ESTATE UNDER § 541

Sovereign Bank argues that the boat is not property of the estate because no right of redemption exists after a writ of replevin is issued, relying on the fact that the Vermont replevin statute, 12 V.S.A. § 5331, is silent on the question (doc. # 23, p.1). The statute reads:

> A person may maintain an action of replevin for goods in the county in which the goods are detained in any of the following circumstances:
> (1)    When goods are unlawfully taken or unlawfully detained from the owner or person entitled to the possession thereof.
> (2)    When goods or chattels which are attached on mesne process or taken in execution, are claimed by a person other than the defendant in the action, or debtor in the execution.
> (3)    When goods are attached or taken in execution and are claimed by the defendant in the action or debtor in the execution as exempt from attachment and levy.

2

12 V.S.A. § 5331. If Sovereign Bank were correct, it would not need relief from stay to repossess and sell the boat pursuant to the writ of replevin. However, the Court finds Sovereign Bank's interpretation of the statute to be flawed.

The Debtor argues by contrast that it is Vermont's redemption statute, 9A V.S.A.§ 9-623, that applies, and because Sovereign Bank had not disposed of the Collateral or entered into a contract for the disposition of the Collateral prior to the commencement of this case, the Debtor retained an equitable interest in the Collateral, via the right of redemption, through the date of his bankruptcy filing, and that interest became part of the bankruptcy estate upon commencement of his case (doc. # 26, p. 1–2). The Debtor is correct. See § 541(a)(1).[2]

Under 9A V.S.A. § 9-609, a secured party may take possession of collateral after default. In relevant part it reads:

>   (a) After default, a secured party:
>       (1) may take possession of the collateral; and
>       (2) without removal, may render equipment unusable and dispose of collateral on a debtor's premises under section 9-610.
>   (b) A secured party may proceed under subsection (a):
>       (1) pursuant to judicial process; or
>       (2) without judicial process, if it proceeds without breach of the peace.
>   (c) If so agreed, and in any event after default, a secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties.

9A V.S.A. § 9-609. Subsections (b)(1) and (b)(2) give a secured creditor two alternative mechanisms by which it may repossess collateral. Subsection (b)(1) refers to a creditor's right to use judicial processes, which would include replevin and levy, and (b)(2) refers to self-help repossession. See Ag Venture Financial Services, Inc. v. Montagne et al., No. S 60-80 Fc. pp. 6–9 (Joseph, J. Sept. 5, 2008). Neither party has cited, and the Court has not found, any Vermont case law that addresses property rights in collateral during the period of time after replevin and before sale, or that indicates that obtaining possession via judicial process, such as a writ of replevin, gives a secured creditor elevated property rights above a creditor who repossessed using self-help. Rather, replevin is available to a creditor to use in order to effectuate repossession when repossession will cause a breach of the peace. See 9A V.S.A. §9-609 (b)(1), (b)(2). Accordingly, the Court turns to cases construing the parties' rights in the repossession context generally to determine the parties' rights in the instant writ of replevin context.

---

[2] Section 541(a) states that property of the estate includes, in relevant part, "all legal **or equitable interests** of the debtor in property as of the commencement of the case" (emphasis added).

3

In <u>United States v. Whiting Pools, Inc</u>, 462 U.S. 198, 103 S.Ct. 2309 (1983), the Supreme Court examined whether the debtor's property, seized by the IRS pre-petition to satisfy a tax lien, was nonetheless property of his Chapter 11 estate and was retrievable by the debtor though the turnover process under § 542(a). <u>Whiting Pools</u>, 462 U.S. at 199–200, 202. The Court concluded that "[g]iven the broad scope of the reorganization estate, property of the debtor repossessed by a secured creditor falls within the rule, and therefore may be drawn into the estate." <u>Id.</u> at 205–06 (discussing §§ 541, 542). Importantly, the Court specifically held that "[o]wnership of the property is transferred only when the property is sold to a <u>bona fide</u> purchaser at a tax sale," and concluded that a debtor continues to own the property after seizure, through the time of sale. <u>Id.</u> at 211. Therefore, in <u>Whiting Pools</u>, the Court held that, until sale, the property remained the debtor's and the debtor had the right to obtain turn over pursuant to §542(a). <u>Id.</u>

The following IRS seizure and levy statute, 26 U.S.C. §§ 6331–6339, makes clear that the debtor may redeem the property post-levy upon payment of the amount due plus certain expenses. In relevant part it reads:

> (a) Before sale.—Any person whose property has been levied upon shall have the right to pay the amount due, together with the expenses of the proceeding, if any, to the Secretary at any time prior to the sale thereof, and upon such payment the Secretary shall restore such property to him, and all further proceedings in connection with the levy on such property shall cease from the time of such payment.

26 U.S.C. § 6337(a). This is quite similar to Vermont's 9A V.S.A. § 9-623. Under that Vermont statute, a debtor has the right to redeem repossessed collateral before a creditor has disposed of it. The statute states:

> (a) A debtor, any secondary obligor, or any other secured party or lienholder may redeem collateral.
> (b) To redeem collateral, a person shall tender:
>  (1) fulfillment of all obligations secured by the collateral; and
>  (2) the reasonable expenses and attorney's fees described in section 9-615(a)(1).
> (c) A redemption may occur at any time before a secured party:
>  (1) has collected collateral under section 9-607;
>  (2) **has disposed of collateral or entered into a contract for its disposition under section 9-610**; or
>  (3) has accepted collateral in full or partial satisfaction of the obligation it secures under section 9-622.

9A V.S.A.§ 9-623 (emphasis added).

The parties in this case dispute whether § 9-623 applies. The Debtor argues that § 9-623(c) applies in this case because Sovereign Bank had not sold the boat or contracted to dispose of it before the Debtor filed for bankruptcy (doc. # 26, p. 1), and Sovereign Bank argues that the statute does not apply because,

4

once it obtained a writ of replevin, it was entitled to immediate possession of the property (doc. # 28, p. 2). Courts in other states with the same U.C.C. provision that Vermont has adopted have applied §9-623(c)(2) provisions to situations similar to that presented in this case. In Garcia v. United Auto Credit Corporation, No. 07-61503-CIV, 2008 WL 141579, at *5 (S.D. Fla. Jan. 11, 2008), the court considered the identical issue and ruled in the debtor's favor, holding that the debtor's right of redemption extended through the date of disposition of the collateral.

This Court has applied Whiting Pools to pre-petition repossession cases, and has held that its holding applies equally in chapter 13 cases. See In re Coleman, No. 02-11603, 2003 WL 1562140 (Bankr. D. Vt. Mar. 20, 2003). In Coleman, the debtor filed a motion for sanctions on the ground that a creditor had violated the automatic stay by refusing to return the debtor's vehicle, which it had lawfully repossessed pre-petition via self-help. Coleman, 2003 WL 1562140, at *1. In reliance upon Whiting Pools, the Court held that when the debtor filed for bankruptcy, his right to redeem the vehicle was an equitable interest included in the property of the estate. Id. at *2. The Court noted that the debtor's interest was not a possessory interest and held that the debtor was required to file a turnover motion pursuant to §§ 542 and 543 to obtain a possessory interest in the vehicle. Id. The Court found that, under Vermont law, a debtor retains only the equitable right of redemption in collateral after it is repossessed, and retains that right until sale of the collateral. Id. at *3 (citing 9A V.S.A. § 9-623). Since the debtor retains an equitable right to redeem collateral repossessed pre-petition, a creditor is required to request relief from stay before selling the collateral, and since all the Debtor retains is a non-possessory interest the Debtor must file a turn over motion to get possession. Id. at n*. Accordingly, the Court denied the debtor's motion for sanctions, and held that the creditor did not violate the automatic stay. Id. at *3.

In the present case, the Debtor remains in possession of the boat because Sovereign Bank did not repossess it before the Debtor filed for bankruptcy relief. Applying Whiting Pools and Coleman to these facts, the Court finds that Sovereign Bank's pre-petition writ of replevin did not extinguish the Debtor's right to redeem through the date of the sale, and because the Debtor still had an equitable property interest in the boat under the right of redemption when he filed his petition, that interest in the boat is property of the estate under § 541. To extinguish the Debtor's interest and to sell the boat, Sovereign Bank must obtain relief from stay.

### B. SOVEREIGN BANK IS ENTITLED TO RELIEF FROM STAY UNDER §362(D)(2)

Sovereign Bank has filed a motion for relief from stay pursuant to §362(d)(2) in order to repossess and sell the boat. The Bankruptcy Code establishes a two prong test for relief from the stay: (1) the debtor lacks equity in the property; and (2) the property is not necessary to an effective reorganization. § 362(d)

5

(2)(A) and (B). The movant bears the burden of proof on the issue of the debtor's equity in the property, and the opposing party bears the burden of proof on all other issues. §362(g)(1) and (2).

It is undisputed that the Debtor has no equity in the boat. The amount of the Sovereign Bank claim listed on Schedule D is $23,791 (doc. # 1, p. 13), and the boat is valued at $11,365 (doc. # 33, p. 2). Thus, Sovereign Bank has met its burden of proving the first prong of § 362(d)(2).

Under §362(g)(2), the debtor has the burden of proving the boat is necessary for his effective reorganization. United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 375, 108 S.Ct. 626, 633, 98 L.Ed.2d 780 (1988); see also In re Frye, 323 B.R. 396, 401 (Bankr. D. Vt. 2005). This requires more than a showing that, if there is an effective reorganization, the property will be needed for it; the Debtor must establish that the property is essential for an effective reorganization. An effective reorganization "means more than just that the debtor needs the property, since all debtors who resist relief from automatic stay obviously regard all their assets as indispensable for reorganization purposes." Frye, 323 B.R. at 401. There must be a reasonable possibility of a successful reorganization within a reasonable time. United Sav. Ass'n of Texas, 484 U.S. at 376.

Generally, recreational boats have been held to be unnecessary to a debtor's effective reorganization. Shaw v. Aurgroup Financial Credit Union, 552 F.3d 447, 455 (6th Cir. 2009) (holding pleasure boat unnecessary for effective reorganization); In re McNeely, 366 B.R. 542 (N.D. W. Va. 2007) (holding that boats, recreational items, and luxury automobiles are generally considered not to be necessary to a debtor's effective reorganization) (citing In re Jess, No. 01-20947, 2001 WL 35814430, 2001 Bankr. LEXIS 2214 at *23 (Bankr. D. Idaho 2001) ("Strictly speaking, recreational goods are probably not 'reasonably necessary' for an effective reorganization"); In re Patti, No. 98-17719, 1999 WL 223505, 1999 Bankr.LEXIS 400 (Bankr. E.D. Pa. April 15, 1999) (holding that a 1996 Bayliner boat was not necessary to the Chapter 13 debtor's reorganization under § 362(d)(2)(B) when the debtor was a tee-shirt salesman and the boat did not help him produce income); In re Zaleski, 216 B.R. 425, 432 (Bankr. D. N.D.1997) ("Blazers, Corvettes, campers and fancy boats have all been regarded by courts as not reasonably necessary expenses"); In re Cordes, 147 B.R. 498, 505 (Bankr. D. Minn.1992) (holding that a 16 foot recreational boat was not necessary to the debtor's Chapter 13 plan of reorganization). Here, however, the Debtor represented that the boat would be used to produce income, rather than be used just for recreational purposes.

The Court held an evidentiary hearing on July 20, 2010, to give the Debtor the opportunity to demonstrate that the boat would, over the term of the plan, generate income sufficient to pay Sovereign Bank's claim in full ($12,946.80), and increase the dividend to unsecured creditors, e.g., improve the

6

effectiveness of his reorganization. If the Debtor was unable to establish this, then retention of the boat, and the corresponding obligation to maintain the boat and make monthly payments to Sovereign Bank, would be made at the expense of general unsecured creditors.

The Debtor testified at an evidentiary hearing with regard to a "boat income plan" he created with the assistance of his counsel. He asserted that he would use the boat for both business and personal use. He testified that he intended to use the boat to create a small business with a "fun on the water theme," which would operate wakeboard and fishing trips, including striped bass fishing runs in Cape Cod in the fall. He estimated that he would operate these boating trips one day per week, for four weeks per month, five months per year, during of months of June through October. He extrapolated that he would make about $300 per week operating his boating business, for a total of $1,200 per month. He estimated that this business would incur annual expenses of $1,100, including $500 for docking fees, $100 for insurance, and $500 for fuel ($100 per month for each of the five months). This led him to the conclusion that his boat business would generate an annual net income of approximately $4,900, or about $408.33 per month. The Debtor's monthly boat payment to Sovereign Bank is $215.78 (doc. # 33), and therefore if his projections were sound, this potential business would yield a net income of $192.55 for distribution through the plan. However, on cross-examination, the Debtor's responses revealed the lack of a foundation for these projections.

When his assumptions were challenged by opposing counsel, the Debtor testified that the plan's $1,200 per month income figure was based on what he understood to be the income other similar boating businesses in the area generated in income, as well as his understanding of the cost of boat rentals in the area.[3] Based on the income these other businesses generated, the Debtor projected that "with minimal effort" he could earn $300 per week. The Debtor further testified that his potential small business idea was based on his review of those companies' web pages; he had done no further research into the business plans or models those companies employed or what marketing strategies those companies used to develop their businesses. The Debtor acknowledged that the development of his boating business was in an "embryonic stage," and that he had not wanted to make great efforts to develop his business because he was not sure whether he would be allowed to keep the boat. He testified that his son was putting together some graphic designs for marketing purposes, but no one had made any other efforts to market or advertise the business. He disclosed that he has no customers signed up for boating trips, and at this point, information about his business was being circulated to potential customers only through word of mouth.

---

[3] Specifically, this figure was extrapolated based on the fees charged by a Vermont wakeboarding school, the cost of boat rental on Woodard Marine, which is $250 for a half day, and the $700 part time income his friend makes on the Harriman Reservoir.

He testified that he would hand out brochures and create a website if he was allowed to keep the boat. Moreover, the Debtor testified that as of July 20, 2010, he had not yet begun generating income from the boat, but anticipated being able to produce income within two weeks. However, since the Debtor did not generate any income for the months of June and July 2010, it is clear he will not attain the 2010 projected income set forth in his business plan.

In response to questions posed during cross-examination, the Debtor admitted that his actual expenses might well differ from what was projected in his boat income plan in several categories. For example, he currently is not paying a docking fee,[4] and he estimated at the hearing that the cost of the docking fee would likely be approximately $500, but could be as high as $1,000 per year. The Debtor also recognized that his current insurance rate of $100 per year would likely increase once he got his boating business operating, though he did not know what the cost of broader insurance coverage would be. Additionally, questions were raised about whether the Debtor would need a license to conduct his business and what that would cost, and the Debtor did not know if or how such a requirement would impact his boat business expenses.

Based on the Debtor's testimony and the record before the Court, the Court finds that the Debtor did not show that the boat is necessary. The Debtor did not set forth a viable business plan demonstrating that the boat will generate income sufficient to offset the cost of the boat. Additionally, the Debtor did not demonstrate a reasonable possibility of a successful reorganization within a reasonable time based upon income from the boat. Accordingly, Sovereign Bank is entitled to relief under the second prong of the relief from stay provision. See § 362(d)(2)(B).

## CONCLUSION

The Court holds that the boat is property of the Debtor's estate despite the fact that Sovereign Bank obtained a pre-petition writ of replevin because the Debtor retained the right to redeem the property as of the date the he filed for bankruptcy relief. See 9A V.S.A. § 9-623. Therefore, Sovereign Bank properly filed a motion from relief from stay. Sovereign Bank's motion for relief from stay is granted because the record establishes that the Debtor lacks equity in the boat and that the boat is not necessary for an effective reorganization.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law.

August 13, 2010  
Burlington, Vermont

Colleen A. Brown  
United States Bankruptcy Judge

---

[4] The Debtor is currently keeping the boat docked at a friend's house in exchange for working on his friend's deck.

8